1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

SKYWAY TOWING AND RECOVERY, INC.,
a Washington corporation,

11                    Plaintiff,                          CASE NO. C04-2474C

12        v.                                              ORDER

13   CITY OF RENTON, a municipal corporation,

14                    Defendant.

15

16   I.    INTRODUCTION

17          This matter has come before the Court on Plaintiff's motion for partial summary judgment (Dkt.

18   No. 8) and Defendant's motion for summary judgment[1] (Dkt. No. 14).  Having carefully considered the

19   papers filed by the parties in support of and in opposition to the motions, the Court has determined that

20   no oral argument shall be necessary.  For the reasons that follow, Plaintiff's motion is DENIED and

21   Defendant's motion is GRANTED.

22   II.   BACKGROUND

23          Plaintiff Skyway Towing is a towing company engaged in the business of providing towing,

24
25          [1]Although Defendant's motion is styled a motion for summary judgment, the motion addresses
     only Plaintiff's contract cause of action and will be treated as a motion for partial summary judgment.

26   ORDER – 1

impoundment and storage services for private property owners, motorists, and law enforcement agencies. (Compl. ¶ 3.1, 3.2.)  Plaintiff entered into several consecutive agreements with the City of Renton for public impound services (to be differentiated from private impounds) starting in November 1996.  The only agreement at issue in the instant action is an agreement covering a period starting in October 16, 2002.  This agreement was set forth in writing in a document called "Towing – Letter of Agreement," which specified the rates to be charged, that towing jobs would be assigned "on a rotational basis with other tow operators who have signed agreements," and the terms on which the agreement could be cancelled.  (Anderson Dep. Ex. 14, "Towing Agreement".)

Although Skyway brought this suit to recover for Defendant's alleged breach of the 2002-2003 contract, the events leading up to the alleged breach commenced in 2001.  In March 2001, the Renton Chief of Police, Garry Anderson, notified Skyway that he had heard that Skyway drivers were impounding known stolen vehicles from private property outside the Renton city limits, transporting them to Skyway's tow yard in Renton, then calling the Renton police to have them "recover" the stolen vehicles.  (Mar. 1, 2001 Anderson Ltr.)  According to Defendant ("the City"), this practice was a problem because it would compromise the collection of evidence.  (Def.'s Opp'n at 3.)  In addition, when the vehicles were towed from outside City limits, "Renton police were then in the unenviable position of doing the work of another agency on the stolen vehicle just because Skyway had decided to tow the vehicle to its tow yard in Renton before determining the stolen status of the vehicle and notifying law enforcement."  (Anderson Decl. ¶ 5.)

On June 4, 2001, Chief Anderson sent a letter to Skyway noting that one of its drivers had impounded a stolen vehicle on May 17, and warning Skyway that it would be removed from the police department's tow list if its drivers continued to impound suspected or known stolen vehicles from outside Renton to its Renton tow yard.  (June 4, 2001 Anderson Ltr.)  This letter was followed by one dated June 20, 2001, which referred to the June 4 letter, noted that another such towing incident had occurred on June 18, and notified Skyway that it had been removed from the police department's tow list.  (June 20,

ORDER – 2

1   2001 Anderson Ltr.)

2        On August 1, Richard Christenson, Skyway's general manager, wrote a letter to Chief Anderson

3   stating that Skyway had "applied for and been granted permission to use the Department of Licensing's

4   VIP's[2] program . . . a system that allows companies that qualify to get RO information and vehicle status

5   with in [sic] minutes over the telephone." (Aug. 1, 2001 Christenson Ltr.)  The letter added that "[i]t is

6   our hopes [sic] to use this system on every vehicle before towing it to help insure that we know the

7   disposition of a car before impounding it."  Mr. Christenson closed by requesting that the decision to

8   remove Skyway from the police department's tow list be rescinded.

9        The next day, Mr. Christenson wrote a letter almost identical to his August 1 letter requesting

10  reinstatement, adding that use of the VIP's system "will allow us to call The Renton Police to do a stolen

11  recovery at the scene of the impound.  RPD may then allow us to remove the car for safe keeping."

12  (Aug. 2, 2001 Christenson Ltr.)

13       On August 3, Chief Anderson replied, acknowledging receipt of the letter dated August 2, and

14  stating that "[y]our agreement to notify the Renton Police Department (or appropriate law enforcement

15  agency of jurisdiction) before towing suspected stolen vehicles will allow Skyway Towing to be

16  reinstated on the rotational towing list."  (Aug. 3, 2001 Anderson Ltr.)  After this reinstatement, the

17  towing agreement was renewed without incident for the November 1, 2001 through October 15, 2002

18  period, and again for the October 16, 2002 through October 15, 2003 period.

19       Despite this apparent resolution of the issue, the record contains evidence that by early 2003, the

20  parties were again encountering some difficulties.  (*See* Feb. 18, 2003 Anderson Ltr., stating that Chief

21  Anderson had been apprised of thirteen separate incidents between November 1, 2002 and January 30,

22  2003.)  On February 6, Chief Anderson met with Skyway drivers to try and resolve the impoundment

23  issues.  At this meeting, some of the drivers informed him that they had had negative interactions with

24

25       [2]"VIP's" refers to IVIPS, the Internet Vehicle/Vessel Information System.

26  ORDER – 3

Renton police officers and that "most agencies' dispatch centers" were instructing Skyway drivers simply to impound the vehicles to the Renton yard and then call the Renton police. (*See id.*)

That same day, a Skyway tow coordinator who had attended the meeting with Chief Anderson, Bonifacio Pauza, wrote a letter to the police department and enclosed a flyer that he said had been distributed to all Skyway drivers reminding them to perform a visual inspection of the vehicle and to run it through the VIP's system to determine whether it was stolen prior to impoundment. (Feb. 6, 2003 Pauza Ltr.)

However, shortly after this letter, Mr. Pauza sent a series of letters appearing to express frustration with the Renton police department's requirement that vehicles be checked prior to impoundment. On February 11, 2003, Mr. Pauza notified the Renton police department that one of Skyway's drivers had been sent home after responding to a private call to remove a stolen vehicle and spending about one hour and thirty minutes on the scene. (Feb. 11, 2003 Pauza Ltr.) On February 13, 2003, Mr. Pauza notified Renton that the Kent police department had requested that stolen vehicles be impounded to a secure location prior to calling the police because he wanted officers to be in a controlled environment while taking the recovery report. (Feb. 13, 2003 Pauza Ltr.)

Chief Anderson's February 18 letter to Mr. Christianson noted that he had confirmed with the Seattle Police Department, King County Sheriff's Office and Tukwila Police Department that it was against their policy to tell Skyway drivers to impound vehicles and then call the Renton police. On February 26, Mr. Pauza followed up with a letter about King County's policy, complaining that

> the King County Sheriff's Office will send officers out to do the stolen recovery on scene but . . . once they have arrived, it [will] become a County impound and . . . will be dispatched from County on the rotation list. This will mean Skyway . . . will lose roughly all Private Lot Impounds that are in the count[y] zones if they are stolen.
>
> We will continue this process regardless, as was discussed by you and Mr. Christiansen [sic].

(Feb.26, 2003 Pauza Ltr.)

ORDER – 4

1        The record is silent until November 7, 2003,[3] when Chief Anderson wrote Mr. Christianson a

2    letter expressing displeasure about four impoundments between June 11, 2003 and August 13, 2003.  The

3    letter concluded by stating that Skyway would be removed from the Renton police department's

4    rotational tow list, effective December 15, 2003. (Nov. 7, 2003 Anderson Ltr.)

5        Plaintiff filed this action in November 2004, alleging breach of contract and violations of the state

6    and federal constitutional contracts clauses and other constitutional rights, and seeking contract damages,

7    injunctive relief and declaratory judgment determining Plaintiff's rights under the applicable state and

8    municipal statutes.

9    III.    ANALYSIS

10        A.    *Applicable standard*

11        Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions and provides

12    in relevant part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions,

13    answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

14    no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."

15    FED. R. CIV. P. 56(c).  In determining whether an issue of fact exists, the court must view all evidence in

16    the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

17    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197

18    (9th Cir. 1996).  A genuine issue of material fact exists where there is sufficient evidence for a reasonable

19    fact-finder to find for the non-moving party.  *Anderson*, 477 U.S. at 248.  The moving party bears the

20    burden of showing that there is no evidence which supports an element essential to the non-movant's

21    claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In order to defeat a motion for summary

22    judgment, the non-moving party must make more than conclusory allegations, speculations or

23

24        [3]The record also contains a copy of an almost identical letter, dated October 27, 2003, but which

25    stated that the removal of Skyway from the rotational list was effective immediately.  (Oct. 27, 2003 Anderson Ltr.)  However, neither party refers to this letter in their briefing.

26    ORDER – 5

1    argumentative assertions that material facts are in dispute.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890

2    (9th Cir. 1994).

3          In the case at bar, Plaintiff has moved for partial summary judgment on its breach of contract

4    claim and its declaratory judgment cause of action.  Defendant has cross-moved for summary judgment

5    on Plaintiff's contract cause of action.  The parties disagree as to whether a contract existed, the terms of

6    that contract, and whether Defendant was authorized to "regulate" the manner in which Plaintiff executed

7    private impoundments.

8          B.    *Applicable laws and agreements*

9                1.    *State statute*

10         The Revised Code of Washington ("RCW") contains a chapter dedicated to the regulation of

11   towing and impoundment.  WASH. REV. CODE ch. 46.55 (2005).[4]  The RCW states that "'[i]mpound'

12   means to take and hold a vehicle in legal custody."  §  46.55.010(3).  The statute goes on to differentiate

13   between public and private impounds; the former are impoundments of vehicles on public property made

14   at the behest of a law enforcement official or other public official with jurisdiction, while the latter are of

15   vehicles on private property made at the behest of a person having control or possession of that property.

16   § 46.55.010(3)(a)-(b).

17         The statute requires that "at the time of impoundment . . . [the driver] shall give immediate

18   notification to a law enforcement agency having jurisdiction who shall maintain a log of such reports,"

19   and that within six to twelve hours of such a report, the law enforcement agency provide certain

20   information about the vehicle and its owners.  § 46.55.100(1).  The towing company is required to send

21   notice of impoundment to the owner of the vehicle within twenty-four hours of impoundment.  §

22   46.55.110(1).

23         Finally, the statute provides that any local ordinances or resolutions "concerning unauthorized,

24

25         [4]This chapter was amended in July 2005 to add provisions relating to the immobilization of
     vehicles.  These amendments are not relevant to the case at bar.

26   ORDER – 6

1  abandoned, or impounded vehicles shall include the applicable provisions of this chapter." §

2  46.55.240(1).

3                    2.      *Renton Municipal Code*

4        Chapter 5 of the Renton Municipal Code ("RMC") governs the impoundment and redemption of

5  vehicles.  The RMC governs only those impoundments executed by or in response to a request from law

6  enforcement, in other words, public impoundments.  RENTON MUN. CODE § 10-5-1 (2005).  Only

7  approved towing companies may execute public impoundments.  § 10-5-3.  The RMC tautologically

8  defines "approved tow company" as any towing-related entity "approved by the Renton Police

9  Department."  § 10-5-1.  Finally, the RMC contained provisions setting forth the penalties for violations

10  of the Code by any approved towing agency, up to and including revocation of "approved" status.  § 10-

11  5-13.

12                    3.      *Towing agreement*

13        In addition to the relevant provisions of the RCW and the RMC, the relationships between the

14  Renton Police Department ("RPD") and approved towing companies were also governed by letters of

15  agreement.  As the Court noted above, *infra* at 2:4-6, these letters specified the rates to be charged, that

16  towing jobs would be assigned "on a rotational basis with other tow operators who have signed

17  agreements," and the terms on which the agreement could be cancelled.  (Anderson Dep. Ex. 14,

18  "Towing Agreement".)  The agreement stated that only tow operators who had signed agreements with

19  the RPD would be called by the RPD except in emergency situations or where the motorist had a

20  personal preference.  (*Id*.)  Cancellation of the agreement could be either (1) without cause, after thirty

21  days notice, or (2) without notice, "for confirmed tow-related criminal activity, deliberate overcharging,

22  or failure to follow requirements outlined in applicable RCW, WAC, City Ordinance and/or other tow

23  operator regulations, and/or procedures as currently formulated or as may be subsequently amended."

24        Thus, according to the terms of the agreement, only those approved tow companies who had

25  signed agreements with the RPD would be placed on the rotational list.  In addition, termination of the

26  ORDER – 7

1   agreement could be without cause if thirty days notice was given.

2       Plaintiff argues that its December removal from the list for noncompliance with the RPD's

3   requirement about prior reporting of private impounds was wrongful because (1) no provision in the

4   contract required such reporting, and (2) to the extent that the contract included such a provision, the

5   provision was invalid as contrary to existing state law.

6       *C.*    *Contract between Skyway and RPD*

7       The written contract between Skyway and the RPD was valid for the period from October 16,

8   2002, through October 15, 2003.  However, the record shows that even after October 15, Skyway was

9   still performing public impounds for the RPD, sometimes as many as three in a day.  (Pauza Decl. Ex. 1.)

10   The rate at which Skyway was assigned public impounds did not decrease after Chief Anderson's

11   November 7 letter giving notice.  (*Id.*)  Thus, although the written agreement had expired, some sort of

12   residual relationship still existed between the parties from October 15, 2003 through December 15, 2003,

13   when Skyway was removed from the rotational tow list, per Chief Anderson's letter.  The question is

14   whether during this period there existed a binding agreement between the parties.

15       It is a well-established principle that a contract does not need to be memorialized in an official

16   writing in order to be legally binding on the purported parties.  Restatement (Second) of Contracts § 27

17   cmt. a (2003).  In addition, where no express contract exists, even an unwritten one, it may be

18          implied in fact with its existence depending on some act or conduct of the party sought to
19          be charged.  It may arise by inference or implication from circumstances which, according
             to the ordinary course of dealing and the common understanding of men, show a mutual
20          intention on the part of the parties to contract with each other.

21   *Bell v. Hegewald*, 628 P.2d 1305, 1306-7 (Wash. 1981).

22       Here, there is no dispute that even after the 2002-2003 letter of agreement expired, the RPD

23   continued to request that Skyway perform public impounds.  Chief Anderson acknowledged that the

24   letters of agreement were generally renewed automatically every year and that he had never terminated a

25   towing company by merely letting the letter expire.  (Anderson Dep. at 43:1-8.)  Indeed, Chief

26   ORDER – 8

1   Anderson's November 7 notification that Skyway would be removed from the rotational tow list,

2   effective December 15, 2003, sent *after* the letter of agreement had expired, is consistent with the

3   behavior of a party observing its obligations under an implied contract whose relevant terms were

4   identical to the recently expired letter of agreement.  For these reasons, the Court finds, as a matter of

5   law, that there was an implied-in-fact contract between the RPD and Skyway even after the written letter

6   of agreement expired on October 15, 2003.

7       The terms of the contract allow the contract to be terminated without cause, with thirty days

8   notice.  (*See, e.g.*, Towing Agreement.)  Skyway argues that Chief Anderson's lengthy recital of reasons

9   for the RPD's decision to remove Skyway from the rotational list requires that his letter be construed as a

10  termination for cause.  The construction or determination of the legal effect of a contract is generally a

11  question of law.  *Syrovy v. Alpine Res., Inc.*, 841 P.2d 1279, 1281 (Wash. Ct. App. 1992), *aff'd*, 859

12  P.2d 51 (Wash. 1993).  A contract should be read as the average person would read it and should not be

13  given a strained or forced construction."  *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 726

14  P.2d 439, 443 (Wash. 1986).  Skyway's proposed interpretation, which would, in effect, forbid the RPD

15  to explain a termination except if the termination were for the specific enumerated reasons, does not

16  naturally follow from the language of the contract.  Instead, the Court finds that an ordinary person

17  would read the alternative termination provisions in the contract simply to require that the RPD give

18  thirty days written notice of termination if termination were to be for any cause except for the reasons

19  enumerated in clause (2), *see infra* at 7.  Therefore, Chief Anderson's November 7, 2003 letter

20  terminating Skyway for a reason other than a reason enumerated in clause (2) and giving Skyway thirty-

21  eight days notice of its removal from the rotational list complies with the terms of the contract.  Once the

22  contract was terminated, Skyway no longer had a right to be on the RPD's rotational list, as only tow

23  operators who had such contracts with the RPD were on the list.  (*Id.*)

24      For these reasons, the Court finds, as a matter of law, that the RPD's removal of Skyway from

25  the rotational list in December pursuant to the November 7 letter did not constitute a breach of the

26  ORDER – 9

1   implied contract.  Therefore, Renton's motion for summary judgment with respect to Skyway's breach of

2   contract cause of action must be GRANTED and Skyway's motion with respect to its contract claim

3   must be DENIED.

4           D.      *Legality of RPD's requests with respect to private impounds*

5           Skyway challenges the legality of the RPD's repeated requests to Skyway to perform private

6   impounds in a particular fashion.  If Skyway prevails on this argument, the termination clause under

7   which RPD terminated its contract because of Skyway's refusal to comply with such illegal requests

8   would not be interpreted or enforced so as to allow such a termination.[5]

9           The City of Renton's authority to pass ordinances regarding the impoundment of vehicles is

10  derived from the Washington Constitution, which provides that "[a]ny county, city, town or township

11  may make and enforce within its limits all such local police, sanitary and other regulations as are not in

12  conflict with general laws."  WASH. CONST. art. XI, § 11.  Renton's power to make such laws is further

13  directed by section 46.55.240 of the RCW, which requires that any local ordinances "concerning

14  unauthorized, abandoned, or impounded vehicles shall include the applicable provisions of this chapter."

15          Assuming without deciding that the RPD requested that Skyway check the status of all vehicles to

16  be privately impounded prior to hooking up the vehicle, and that this request constituted an "ordinance"

17  rather than part of a contract, Skyway's argument that this ordinance is unconstitutional must still fail.

18  "An ordinance which violates or conflicts with general statutes is invalid and unconstitutional."  *Adams v.*

19  *Thurston County*, 855 P.2d 284, 289 (Wash. Ct. App. 1993) (citations omitted).  The parties agree that

20  *Adams* sets forth the correct analysis under Washington law: "An ordinance conflicts with state law if it

21  permits or licenses what the statute forbids or declares right what the statute declares wrong, or vice

22

23  _____

24  [5]Note that even if this were the case, the contract itself would not necessarily be rendered illegal.
    *Armour & Co. v. Jesmer*, 136 P. 689, 691 (Wash. 1913) (stating the principle that a contract that does
25  not require or contemplate the doing of an illegal act is not itself rendered illegal if carried out in an illegal
    way).

26  ORDER – 10

1    versa.  The two provisions must be contradictory in the sense that they cannot coexist." *Id.* (citing

2    *Republic v. Brown*, 652 P.2d 955, 957-58 (Wash. 1982)).

3          Here, no part of Renton's "ordinance" requiring that Skyway report stolen vehicles prior to

4    hooking them up to the tow truck actually conflicts with any applicable state law.  Section 46.55.240 of

5    the RCW requires that all local ordinances include the applicable RCW provisions, but it does not require

6    that the local ordinances mirror the RCW or preclude them from enumerating additional requirements.

7          Skyway's citation to *Seattle v. Williams*, 908 P.2d 359 (1995), is inapposite to the case at bar.

8    The *Williams* court found that a local ordinance prescribing a lower acceptable blood alcohol content

9    than does RCW 46.61.502 impermissibly undermined the uniformity requirements of sections 46.08.020

10   and 46.08.030.  *Id.* at 364.  These two sections provide that the provisions of Title 46 (titled "Motor

11   Vehicles") relating to vehicles and to the operation of vehicles "shall be applicable and uniform"

12   throughout the state and upon persons operating vehicles on the public highways of the state.  WASH.

13   REV. CODE §§ 46.080.020 and 46.080.030.  The Renton "ordinance" setting forth requirements to be

14   observed by a tow truck operator prior to effecting a private impound is not an ordinance relating to

15   "vehicles" or to the operation of vehicles.  Thus, Renton's "ordinance" is not subject to the same

16   constraints as laws regarding traffic.  *See* WASH. REV. CODE § 46.04.590 (defining "traffic" as including

17   "pedestrians, ridden or herded animals, vehicles, street cars, and other conveyances either singly or

18   together, *while using any public highways for purposes of travel*") (emphasis added).

19         For these reasons, the Court does not find that the RPD's request that Skyway verify the status of

20   every private impound and notify the RPD of stolen vehicles prior to "hooking up" the vehicle, even if

21   considered an "ordinance," conflicted with any applicable general law in violation of Article XI, section

22   11.  Therefore, Skyway's motion for summary judgment on its declaratory judgment cause of action must

23   be DENIED.[6]

24

25         [6]The Court need not reach the question of how "impound" should be interpreted.

26   ORDER – 11

1   IV.    CONCLUSION

2         In accordance with the foregoing, Renton's motion for summary judgment with respect to

3   Skyway's fifth cause of action is hereby GRANTED and Skyway's motion for summary judgment with

4   respect to its fifth and sixth causes of action is hereby DENIED.

5         Skyway is directed to SHOW CAUSE by September 30, 2005, why its remaining causes of action

6   should not be dismissed in light of this order.

7

8

9         SO ORDERED this 19th day of September, 2005.

10

11

12   _____

13   UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER – 12